Date signed September 30, 2014



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| In Re: | | |
|---|---|---|
| Michael Gonsalves | Case No. | 12-30233 |
| Debtor | Chapter | 13 |
| Monica Gonsalves | | |
| Plaintiff | | |
| vs. | Adversary No. | 13-00023 |
| Michael Gonsalves | | |
| Defendant | | |

### MEMORANDUM OF DECISION

Before the Court is a motion for summary judgment filed by defendant Michael Gonsalves requesting dismissal of plaintiff Monica Gonsalves's claim that a $75,000 monetary award issued in their divorce proceeding should be excepted from discharge under 11 U.S.C. §523(a)(2)(A). Plaintiff opposes the motion. The issue presented is whether findings made in the divorce proceeding should be given preclusive effect establishing the elements of a claim under §523(a)(2)(A). For the reasons stated herein, the court concludes that the findings do not

establish the elements for a claim of dischargeability under §523(a)(2)(A).  The court will deny the motion and set the matter for trial.

The Court has jurisdiction over this matter under 28 U.S.C. §§1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

## Material Facts Not in Dispute

Plaintiff and defendant were married in 2000 and separated in 2008.  Plaintiff filed for divorce on July 14, 2010.

A hearing was held before the Master for Family Division (the "Master"), who issued a report of findings and recommendations in August, 2011 (the "Master's Report").  Docket No. 1-3.  The Master considered, among other issues, whether any extant property should be included in the property available for a monetary award.  *Id*. at 4-6.  In particular, the Master addressed the proceeds from the sale of a condominium that the parties had purchased in Greenbelt, Maryland.  The sale generated net proceeds of $130,985.00.  Upon analyzing the evidence concerning the disposition of the funds, the Master found that the proceeds were extant property and available for consideration in a monetary award.  The Master found, among other things,

> The parties purchased a condo located in Greenbelt, Maryland in 2001. The purchase price of the condominium was $85,000.00.  The parties sold the condominium for $220,000.00 in 2006.  After expenses, the net proceeds were $130,985.00.  The proceeds of the sale of the condo were placed in a joint checking account in Chevy Chase Bank.  Thereafter, Plaintiff transferred $50,000 from the joint account at Chevy Chase Bank into a certificate of deposit in a different account at Chevy Chase Bank in the sole name of the Plaintiff.  At the request of the Defendant, Plaintiff transferred the $50,000 certificate of deposit in her sole name to an account in Chevy Chase Bank in the sole name of the Defendant. Thereafter Defendant made a series of transactions from the parties' joint account.  Defendant transferred money in and out of various accounts titled in his own name and made payments to various relatives.  Plaintiff states she was unaware of the transactions.  Defendant used $20,000 to

>pay back a loan to his aunt he states was borrowed in 2001 and another $20,000 was loaned to his brother. Defendant states the loan from his brother was paid back in 2008 and used for household expenses. Defendant claims the loan was paid back and this money also used for family purposes. No documentation was submitted to support any of the expenses claimed in this case. Finally, Defendant withdrew funds for the children's college fund. No further information was provided about the fund. I find $130,985.00 is extant property and should be included as marital property.

*Id.* at 5.

The Master further found

>As indicated above, I find $130,985.00 is extant property and available for consideration in a monetary award. Plaintiff testified and I find the funds were acquired during the course of the marriage and she did not know how the funds were used and the funds were not used for family purposes. Plaintiff testified, when she asked the Defendant about the money she was told to mind her business and the money belonged to him, the Defendant. Defendant testified that the funds were expended for family expenses. Some of Defendant's testimony was not credible.

*Id*. at 7.

The Master considered the eleven factors set forth in Md. Code Ann., Fam. Law §8-205(b) in determining whether a monetary award should be made "to adjust the equities of the parties." *Id*. The Master recommended that a $75,000 monetary award should be given from the defendant to the plaintiff to adjust the equities. *Id*. at 8.

The Circuit Court for Prince George's County, Maryland, granted plaintiff a Judgment of Absolute Divorce on April 5, 2012. Docket No. 1-2. The Circuit Court accepted the findings and recommendations of the Master and granted plaintiff the recommended monetary award of $75,000. *Id*. The Circuit Court ordered defendant to pay the $75,000 within six months, otherwise a money judgment would be entered in favor of plaintiff for any unpaid amount.[1]

---

[1] Plaintiff refers to the $75,000 monetary award as a judgment, although no evidence has been submitted that a judgment was entered. Because the Judgment of Absolute Divorce is final and was obtained within the limitations period, whether a judgment was entered for the monetary award does not change the analysis set forth herein.

3

Defendant filed for chapter 13 bankruptcy relief on November 9, 2012, before any part of the award was paid.  Plaintiff filed this adversary proceeding on January 8, 2013, seeking to except the marital award from discharge because it resulted from defendant's fraudulent dissipation of marital property.  Plaintiff brought her claims under 11 U.S.C. §§523(a)(2)(A), (a)(6) and (a)(15).  The court previously dismissed plaintiff's claims under §§523(a)(6) and (a)(15) and denied defendant's motion to dismiss the complaint on statute of limitations grounds.  Docket No. 25.

## Conclusions of Law

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings.  Under Fed. R. Civ. P. 56, the court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> In evaluating a summary judgment motion, a court "must consider whether a reasonable [factfinder] could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex*, 190 F.3d at 633. In doing so, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 351-52 (4th Cir. 2007).

Plaintiff brings her claim under §523(a)(2)(A).  "[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort,

4

unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991), (citations and internal quotations omitted). However, this fresh start is limited, and "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212 (1998) (citations and internal quotation marks omitted). This policy, codified in §523(a)(2)(A), provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt–
> \*\*\*\*\*
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

*Id.* While exceptions to discharge are narrowly interpreted to protect the policy of a fresh start, it is equally important that "perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

The Fourth Circuit has considered §523(a)(2)(A) on several occasions. It has held that to prevail on a §523(a)(2)(A) claim, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) plaintiff's justifiable reliance on the misrepresentation." *In re Biondo*, 180 F.3d at 134. *Accord*, *Rountree v. Nunnery*, 478 F.3d 215, 218 (4th Cir. 2007). To prevail on a claim that a debt should be excepted from discharge, a creditor must prove all elements of §523(a)(2) by a preponderance of the evidence. *Grogan*, 498 U.S. at 291.

Plaintiff contends that the *Biondo* test is not the exclusive standard for establishing a §523(a)(2)(A) claim.  She argues that §523(a)(2) excepts from discharge debts that arise from "actual fraud," and therefore a §523(a)(2) claim can be made without the need for a fraudulent misrepresentation or creditor reliance.  She asks the court to adopt the test for actual fraud set forth in *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000).  There the court held that a plaintiff can establish a §523(a)(2)(A) claim by proving "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id*. (quoting 4 Collier on Bankruptcy ¶523.08[1][e] (15th ed., 2000)) (adopted by *Mellon Bank N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 876 (B.A.P. 6th Cir. 2001).

Several courts have adopted *McClellan's* holding that actual fraud is a separate claim from fraudulent misrepresentation and that it does not share identical elements.  Both the Bankruptcy Appellate Panels of the Sixth Circuit and the Tenth Circuit have adopted and expanded upon the *McClellan* definition of actual fraud.  *See In re Vitanovich*, 259 B.R. 873; *Diamond v. Vickery*, 488 B.R. 680, 691 (B.A.P. 10th Cir. 2013).

The court has misgivings whether the broader application of §523(a)(2)(A) stated in *McLellan* is available in the Fourth Circuit in light of *Biondo* and *Nunnery*.  In *Nunnery*, the Fourth Circuit was called upon to determine whether a debt incurred by fraud was dischargeable where the debtor did not obtain "money, property, or services, or an extension, renewal, or refinancing of credit" via the fraud.  478 F.3d at 217.  The Court concluded that §523(a)(2)(A) does not except simply any debt incurred as a result of fraud, but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit.  *Id*. at 222.  In so holding, the court stated

> [w]e adhere to the principle of statutory construction that advises us to "account for a statute's full text." *U.S. Nat'l Bank of Or. v. Indep. Ins.*

6

>   *Agents of Am., Inc*., 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L. Ed.2d 402
>   (1993).  We thus note that in the exceptions to discharge articulated in
>   §523, Congress provided protection for creditors injured by the torts of
>   bankrupt debtors in subsection (a)(6), which excepts from discharge a debt
>   incurred as a result of the debtor's "willful and malicious injury" to the
>   creditor or her property.  It would be unnecessary for subsection (a)(2)(A)
>   also to provide relief for judgment creditors injured in tort.  The additional
>   subsection of §523(a)(2), which excepts from discharge debts for money,
>   property, services, or credit to the extent obtained by use of a false written
>   statement, §523(a)(2)(B), makes clear that *Congress intended §523(a)(2)
>   to protect creditors who were tricked by debtors into loaning them money
>   or giving them property, services, or credit through fraudulent means.*  In
>   Nunnery's case, Rountree's fraud may have injured her, but Rountree did
>   not commit the fraud in order to obtain anything in the sense contemplated
>   by §523(a)(2).

*Id.* at 219-20 (emphasis added).[2]  It is clear that misrepresentation, inducement, and reliance are all critical components of a §523(a)(2)(A) claim under *Nunnery*, and those elements are lacking in a *McLellan* claim.  Moreover, in *Biondo*, the Court adopted the four part test for proving fraudulent misrepresentation specifically in the context of "actual fraud."  *Biondo*, 180 F.3d at 134.  Thus, while the Fourth Circuit has not been expressly called upon to determine if the *McLellan* standard states a claim under §523(a)(2)(A), *McLellan* appears inconsistent with the Fourth Circuit's holdings in *Biondo* and *Nunnery*.

This court, however, need not determine whether a *McLellan* claim is available in the Fourth Circuit.  On the record before the court, the Master's Report does not preclusively establish a §523(a)(2)(A) claim under either *Biondo* or *McLellan*.

It is well established that issue preclusion applies in bankruptcy dischargeability proceedings.  *Grogan,* 498 U.S. at 284.  Federal courts are required "to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would

---

[2]  Similar rationale led the concurrence in *McLellan* to conclude that such a claim is more properly brought under §523(a)(6), which excepts from discharge debts that result from willful and malicious injury, rather than 523(a)(2)(A).  *McLellan*, 217 F.3d at 890.

7

do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980).  Determinations regarding the preclusive effect of state court judgments are made using the law of the state in which the judgment was rendered.  *See, e.g. Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327 (1985).

In Maryland, collateral estoppel is intended to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Colandrea v. Wilde Lake Cmty. Ass'n*, 761 A.2d 899, 907 (Md. 2000) (quoting *Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 503-04 (Md. 1989)).  "When an issue of fact or law is actually litigated and determined by a valid and final judgment, . . . the determination is conclusive in a subsequent action between the parties, whether or not on the same claim." *R&D 2001, LLC v. Rice*, 938 A.2d 839, 849 (Md. 2008) (citations and internal quotation marks omitted).  Maryland courts follow a four-part test to determine if the doctrine of collateral estoppel applies:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Wash. Suburban Sanitary Comm'n v. TKU Assocs.,* 376 A.2d 505, 514 (Md. 1977).  There is no dispute that the second, third and fourth elements are met.

The dispute focuses on the first element, and specifically whether the Master determined that the defendant committed fraud that meets the standards of §523(a)(2)(A).  On its face, however, the Master's Report makes no factual findings from which this court could determine

that the elements of §523(a)(2)(A) are met under either the *Biondo* or *McLellan* standards. The Master found that the defendant took marital funds and spent them, and that the defendant did not provide a credible explanation of what he did with the funds. The Report states that when plaintiff asked the defendant about the money, "she was told to mind her business and that the money belonged to him." Docket No. 1-3 at 6. These findings do not establish a finding of fraud and cannot be given preclusive effect for a claim of fraud.

Perhaps recognizing the lack of findings for a fraud claim in the Master's Report, plaintiff asks this court to consider the legal standards for finding extant property under Maryland law. Plaintiff argues that, in light of these standards, the Master's findings that the funds were declared extant marital property should be given preclusive effect that the defendant acted fraudulently in dissipating the funds. This court disagrees.

The Master's Report did not include a statement of the standards employed to determine extant property. But the standards are well established. In determining a marital award in Maryland, a court must determine the amount and value of marital property at trial. Property that is disposed of before trial cannot be declared marital property, with the exception of dissipated property. *Omayaka v. Omayaka*, 12 A.3d 96, 101 (Md. 2011). Generally,

> marital property which generates a monetary award must ordinarily exist as "marital property" as of the date of the final decree of divorce based on evidence adduced at the trial on the merits or a continuation thereof. Therefore, property disposed of before commencement of the trial under most circumstances cannot be marital property. Although, "marital property" is defined as "all property, however titled, acquired by either or both spouses during their marriage . . . ," the legislative scheme of the 1978 Marital Property Act contemplates determination of marital property at the time marriage is dissolved, i.e., when the absolute divorce is granted.

*Gravenstine v. Gravenstine*, 472 A.2d 1001, 1010 (Md. App. 1984). The exception to the marital property rule is when one spouse improperly or wrongfully dissipates marital property. *See Hiltz*

9

*v. Hiltz,* 73 A.3d 1199, 1218 (Md. App. 2013) (citation omitted); *Choate v. Choate*, 629 A.2d 1304, 1314 (Md. App. 1993). "Wrongful dissipation occurs when one spouse uses marital property for his or her own benefit for purposes unrelated to the marriage, at a time when the marriage is undergoing an irreconcilable breakdown." *Hiltz,* 73 A.3d at 1218. The critical inquiry is what was the purpose behind spending the marital funds., whether it was "expended for the principal purpose of reducing the funds available for equitable distribution." *Jeffcoat v. Jeffcoat,* 649 A.2d 1137, 1142 (Md. App. 1994) (quoted in *Omayaka,* 12 A.3d at 104). *See Heger v. Heger*, 964 A.2d 258, 265 (Md. App. 2009) (citations omitted).

The party making the allegation carries the initial burden of persuasion. *Heger*, 964 A.2d at 265.

> That party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that monies have been dissipated, i.e. expended for the principal purpose of reducing the funds available for equitable distribution, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

*Jeffcoat v. Jeffcoat,* 649 A.2d 1137, 1142 (Md. App. 1994) (quoted in *Omayaka,* 12 A.3d at 104).

Plaintiff argues that the court in *Sharp v. Sharp*, 473 A.2d 499 (Md. App. 1984), stated that a clear dissipation of marital assets is actual fraud. That court held:

> [W]here a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is *no more than a fraud on marital right*s, and the chancellor should consider the dissipated property as extant marital property . . . to be valued with the other existing marital property. This principle would apply even where the dissipated property cannot be recovered because it is in the hands of a purchaser who took in good faith, without notice and for value.

*Sharp*, 473 A.2d at 505 (emphasis added and citations omitted). However, the term "fraud on marital rights" is a term of art and is not the equivalent of actual fraud. Historically, "fraud on

10

marital rights" was used in discussing intestate issues that arose when a husband transferred during his lifetime his separate property by gift or otherwise, free of the marital rights of his wife. The Court of Appeals has explained that "the body of precedents forming the doctrine that, until now, has been referred to as fraud on marital rights has really little to do with common law fraud as typically understood." *Karsenty v. Schoukroun*, 959 A.2d 1147, 1151 (Md. 2008).

At its core, plaintiff asks this court to determine that a finding in a Maryland divorce proceeding that property is extant property establishes a claim under §523(a)(2)(A), as a matter of law and without any factual findings in support of a finding of fraud. This, the court declines to do. A determination that property is extant property can be made upon a showing that a spouse expended assets "for the principal purpose of reducing the funds available for equitable distribution." *Jeffcoat,* 649 A.2d at 1142. Such a showing does not meet the standard of *Biondo*, a point that plaintiff does not seriously dispute. Nor does such a showing meet the standards of *McClellan,* requiring "any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another." *McLellan*, 217 F.3d at 893.

Moreover, the court notes that the determination that certain property is extant property does not lead to a judgment for the amount of the extant property, or even the non-dissipating spouse's share of the extant property. Rather, the extant property is considered to be marital property for purposes of making an equitable distribution. *See* Md. Code Ann., Fam. Law §§8-201(e)(1), 8-202, 8-203, 8-205.

This point is evident in the Master's Report. The Master determined that $130,985.00 was extant property. Docket No. 1-3 at 5. In determining that plaintiff should receive a marital award of $75,000, the Master then considered the eleven factors set forth in Md. Code Ann., Fam. Law §8-205(b), stating that "[n]o other factor was considered." *Id*. at 8. It was the

11

Master's consideration of the equitable factors that led to the marital award, not the determination that the funds were extant property. *Id.* at 7-8. There is no direct nexus in the Master's Report between the amount of the extant property and the marital award, other than the extant property was included in the assets that were the subject of the equitable adjustment. And, it must be noted, none of the factors considered by the Master in determining the amount of the equitable distribution included the defendant's intent or culpability, plaintiff's reliance, or other factors that would ordinarily be pertinent to a judgment for fraud. *Id.*

Accordingly, the court concludes that the Master's Report and Judgment of Absolute Divorce cannot be given preclusive effect on plaintiff's claim under §523(a)(2)(A). However, in so ruling, the court stops short of granting summary judgment in favor of defendant. Merely because the Master's Report is not given preclusive effect does not bar plaintiff from seeking to establish her claim under §523(a)(2)(A). The court will set the matter for trial.

## Conclusion

For the foregoing reasons the court concludes that the Master's Report and Judgment of Absolute Divorce cannot be given preclusive effect on plaintiff's claim under §523(a)(2)(A). A separate order will issue.

cc:    all parties
        all counsel

**<u>END OF MEMORANDUM</u>**